**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JAY BROWN,

       Plaintiff,                                                    Case No. 10-10137

v.                                                                            Hon. Gerald E. Rosen

AJAX PAVING INDUSTRIES, INC., *et al.,*

       Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANT**
**AJAX PAVING INDUSTRIES' MOTION FOR SUMMARY JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on      September 17, 2010

PRESENT:  Honorable Gerald E. Rosen
                   Chief Judge, United States District Court

## I. **INTRODUCTION**

Plaintiff Jay Brown commenced this case in this Court on January 13, 2010,

asserting claims under the federal Racketeer Influenced and Corrupt Organizations Act

("RICO"), 18 U.S.C. § 1961 *et seq.,* against his former employer, Defendant Ajax Paving

Industries, Inc., and a number of other Defendants. In support of these RICO claims,

Plaintiff alleges that Defendants engaged in a scheme to deny him worker's compensation

benefits for a workplace injury he suffered in July of 2005.

In lieu of answering Plaintiff's complaint, Defendant Ajax Paving Industries has

filed a February 16, 2010 motion seeking an award of summary judgment in its favor.[1]  In

support of this motion, Defendant Ajax contends that Plaintiff's claims against his former

employer are barred by a release he signed in connection with the settlement of his claim

for worker's compensation benefits.  In response, Plaintiff argues that this release does

not encompass the RICO claims asserted in his complaint.

Having reviewed the parties' briefs in support of and opposition to Defendant's

motion, as well as the accompanying exhibits and the record as a whole, the Court finds

that the relevant allegations, facts, and legal arguments are adequately presented in these

written submissions, and that oral argument would not aid the decisional process.

Accordingly, the Court will decide Defendant Ajax's motion "on the briefs."  *See* Local

Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan.  For the reasons set forth

below, the Court finds that this motion should be granted.

## II.  FACTUAL BACKGROUND

For present purposes, the pertinent facts are quite limited and may be briefly

summarized.  Plaintiff Jay Brown was employed by Defendant Ajax Paving Industries,

Inc. from May of 2004 until September of 2009.  In July of 2005, he hurt his left shoulder

while on the job.  Plaintiff applied for worker's compensation benefits under Michigan's

Workers' Disability Compensation Act ("WDCA"), Mich. Comp. Laws § 418.101 *et seq.,*

but Defendant Ajax denied this claim, evidently on the ground that Plaintiff's injury was

---

[1]The other Defendants likewise have filed motions to dismiss the complaint.  These
motions will be addressed in a separate opinion.

not work-related. Upon administrative review of this denial, Plaintiff was awarded

medical and wage loss benefits, and Defendant Ajax appealed this decision.

While this appeal remained pending, Plaintiff and Ajax agreed to a settlement of

Plaintiff's claim for worker's compensation benefits. In connection with this settlement,

Plaintiff signed a document dated September 1, 2009 and captioned "RESIGNATION,

WAIVER OF SENIORITY AND RELEASE OF ALL CLAIMS." (Defendant's Motion,

Ex. 1 (hereafter referred to as the "Release").) In this document, Plaintiff agreed, in

consideration for payment of a settlement amount of $70,000, that he would (i)

"voluntarily quit his employment with Ajax Paving Industries, Inc.,", (ii) "waive[] any

and all seniority rights he may have," (iii) "release[] any claim he may have for re-

employment based on such seniority rights," and (iv) "not apply for re-employment with

Ajax Paving Industries, Inc. in the future." (Release at 1.)

Of particular relevance here, the Release included the following language:

> . . . Jay E. Brown, in consideration for consent to this Agreement to
> Redeem Liability under the Workers' Disability Compensation Act, . . .
> hereby forever release[s] and discharge[s] Ajax Paving Industries, Inc., its
> agents, attorneys, employees and successors of any and all liabilities, causes
> of action, damages, claims, and demands, of whatever kind and nature,
> arising out of the employment relationship.
>
> Jay E. Brown specifically releases Ajax Paving Industries, Inc. from
> any alleged claim or violation of the personnel policies of Ajax Paving
> Industries, Inc., violation of any employment contract, any tort claims, any
> discrimination claims, claims of violation of ADA or Michigan
> Handicappers Law, claim of violation of Title VII of Civil Rights Act of
> 1964, claim of violation of Age Discrimination in Employment Act, claim
> of violation of the Elliot-Larsen Civil Rights Act, claim of violation of the
> Family Medical Leave Act, claim of wrongful discharge, claim of violation

of the Employee Retirement Income Security Act and any and all claims arising out of Jay E. Brown's employment or termination of employment with Ajax Paving Industries, Inc.

(*Id.*) Finally, Plaintiff acknowledged that he had read the Release and fully understood its terms, that the Release "constitute[d] the complete and entire agreement" between him and his former employer, that he had been advised of his right and opportunity to review the Release with an attorney, that he had seven days to revoke his agreement to the Release, and that he was executing the Release freely and voluntarily. (*Id.* at 1-2.)[2]

On January 13, 2010, Plaintiff commenced the present action, alleging that Defendant Ajax and the other Defendants — including a number of firms involved in processing worker's compensation claims and a doctor retained to perform independent medical examinations of claimants — engaged in an unlawful scheme to deny and defraud Plaintiff and others of worker's compensation benefits. In the present motion, Defendant Ajax contends that the claims against it arise out of Plaintiff's employment relationship with Ajax, and that these claims therefore are barred under the express terms of the Release.

---

[2]Apart from this Release, Plaintiff also signed an "Agreement to Redeem Liability," in which he agreed, in exchange for a payment of $70,000, to settle "any and all claims for past, present and future" compensation benefits and medical expenses under the WDCA. (Defendant's Motion, Ex. 2.) This agreement was then approved by a magistrate through a "Redemption Order" entered on September 2, 2009. (*See* Defendant's Motion, Ex. 3.)

## III.  ANALYSIS

**A.      The Standards Governing Defendant's Motion**

Through the present motion, Defendant Ajax seeks an award of summary judgment in its favor on the RICO claims asserted against it in Plaintiff's complaint. Under the pertinent Federal Rule, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

For purposes of deciding the present motion, the pertinent record is quite limited and wholly undisputed.  In particular, Defendant's motion rests entirely upon the terms of the Release executed by Plaintiff in connection with the settlement of his claim for worker's compensation benefits.  Thus, the sole question before the Court is whether the unambiguous terms of the Release dictate, as a matter of law, that Plaintiff has relinquished his right to pursue his RICO claims against Defendant Ajax.

**B.** **Plaintiff's RICO Claims Against Defendant Ajax Arise Out of His Employment Relationship With His Former Employer, and Therefore Are Barred by the Release.**

Under Michigan law, if the language of a contract is "clear and unambiguous, its meaning is a question of law" for the Court to decide. *Port Huron Education Association v. Port Huron Area School District,* 452 Mich. 309, 550 N.W.2d 228, 237 (1996).[3] Only "[w]here the contract language is unclear or susceptible to multiple meanings" does its "interpretation become[] a question of fact." *Port Huron Education Association,* 550 N.W.2d at 237. Moreover, the courts should avoid "creat[ing] ambiguity where none exists." *Smith v. Physicians Health Plan, Inc.,* 444 Mich. 743, 514 N.W.2d 150, 157 (1994). Rather, a contract is ambiguous only if "its words may reasonably be understood in different ways." *Raska v. Farm Bureau Mutual Insurance Co.,* 412 Mich. 355, 314 N.W.2d 440, 441 (1982). Finally, the Michigan courts have confirmed that settlement agreements and releases are to be construed in accordance with these ordinary principles of contract interpretation, and that, just as with other sorts of contracts, "the scope of a release is governed by the intent of the parties as it is expressed in the release." *Gramer v. Gramer,* 207 Mich. App. 124, 523 N.W.2d 861, 862 (1994).

In this case, the pertinent language of the Release executed by Plaintiff in connection with the settlement of his worker's compensation claim is clear and unambiguous. In particular, Plaintiff agreed in this document to "forever release and

---

[3]The parties agree that Michigan law governs the interpretation of the Release, and each side relies exclusively on Michigan law in arguing for its preferred reading of the Release.

discharge [Defendant Ajax] . . . of any and all liabilities, causes of action, damages, claims, and demands, of whatever kind and nature, arising out of the employment relationship." (Release at 1.) Similarly, in the next paragraph, Plaintiff agreed to "specifically release" Defendant Ajax from liability under a variety of theories of recovery, including claims brought under a number of state and federal statutes, "any tort claims," and "any and all claims arising out of [Plaintiff's] employment or termination of employment with" Defendant Ajax. (*Id.*) While Plaintiff vaguely appeals to purported ambiguities in this language, and suggests ways in which this language could have more clearly and explicitly encompassed the RICO claims asserted in this case, (*see* Plaintiff's Response at 6-8), he does not (and cannot) dispute that the Release bars any and all claims arising out of his employment relationship with his former employer, Defendant Ajax.

The dispositive question, then, is whether the RICO claims asserted against Defendant Ajax in this case arise out of the employment relationship between Plaintiff and Ajax. The Court readily concludes that they do. The allegations of the complaint directed at Defendant Ajax all concern and arise from either (i) Ajax's obligation under Michigan law to provide worker's compensation benefits to its Michigan workers, including Plaintiff, (*see, e.g.,* Complaint at ¶¶ 6, 10(2)), or (ii) Ajax's conduct in handling the worker's compensation claims of Plaintiff and other employees, (*see, e.g., id.* at ¶¶ 9(E)(1), 13, 25(A)). More generally, the illegal scheme identified in the complaint consists of the denial of worker's compensation benefits to which Plaintiff and other

employees allegedly were entitled for on-the-job injuries suffered while in Ajax's

employ.  Similarly, Plaintiff identifies his damages as consisting of (i) lost worker's

compensation benefits, (ii) losses stemming from his delayed receipt of these benefits,

and (iii) the attorney fees incurred to secure these benefits.  (*Id.* at 29.)  In short, and as

Plaintiff expressly acknowledges, the claims against Ajax in this case arise from Ajax's

"handling of a worker's compensation claim" and its actions "in workers compensation

litigation."  (Plaintiff's Response at 6-7.)

The Court fails to see how the actions of an employer in handling and litigating an

employee's claim for worker's compensation benefits could be viewed as conduct lying

outside the employer/employee relationship.  Absent an employer/employee relationship

between Plaintiff and Defendant Ajax, Plaintiff had no entitlement to benefits under the

WDCA, and Ajax had no obligation under this statute to pay benefits to Plaintiff arising

from an on-the-job injury.  *See Erickson v. Goodell Oil Co.,* 384 Mich. 207, 180 N.W.2d

798, 799 (1970) ("Before benefits or rights under the workmen's compensation act can be

claimed, an employer-employee relationship . . . must be shown to exist."); *Davidson v.*

*Board of County Road Commissioners of County of Wayne,* 86 Mich. App. 592, 272

N.W.2d 740, 742 (1978) (recognizing that the WDCA "is predicated on the existence of"

an employer/employee relationship).  Necessarily, then, Plaintiff's claim for benefits

under the WDCA rested upon "work-related" injuries he suffered "while employed by

Ajax," as he concedes in his complaint.  Complaint at ¶ 9; *see also* Mich. Comp. Laws §

418.301 (dictating an award of worker's compensation benefits for an employee who

"receives a personal injury arising out of and in the course of employment by an employer who is subject to this act at the time of the injury").  And, of course, it was only by virtue of Defendant Ajax's status as Plaintiff's employer and the existence of an employer/employee relationship with Plaintiff that the company was called upon to participate in administrative proceedings concerning Plaintiff's claim for worker's compensation benefits.  Finally, Plaintiff remained employed by Ajax throughout this entire period, resigning from his job only on the same day he settled his worker's compensation claim and signed the Release.  It follows that any wrongful conduct by Defendant Ajax that could give rise to Plaintiff's RICO claim against his former employer must have stemmed from — or, in the words of the Release, "aris[en] out of" — the employment relationship between Plaintiff and Ajax.

Against this common-sense conclusion resting upon the plain meaning of the Release, Plaintiff does not even attempt to explain how the actions of an employer in handling a employee's claim for worker's compensation benefits, or in the course of an administrative hearing on an employee's claim for such benefits, could be characterized as somehow occurring outside of and apart from the employer/employee relationship. Rather, Plaintiff simply insists, without elaboration or explanation, that his "RICO claim does not 'arise' from any actions of Ajax in the *employment* relationship, but from actions of Ajax in workers compensation litigation."  (Plaintiff's Response at 7.)  As Defendant Ajax aptly observes, "[t]his is a distinction without a substantive difference." (Defendant's Reply Br. at 1.)  Despite Plaintiff's *ipse dixit* to the contrary, the Court finds

that Plaintiff's RICO claims against Defendant Ajax are barred by his release of all claims

against Ajax "arising out of the employment relationship."[4]

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant Ajax Paving

Industries, Inc.'s February 16, 2010 motion for summary judgment (docket #13) is

GRANTED.


                                        s/Gerald E. Rosen
                                        Chief Judge, United States District Court

Dated:  September 17, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record
on September 17, 2010, by electronic and/or ordinary mail.

                                        s/Ruth A. Gunther
                                        Case Manager

---

[4]In light of this conclusion resting upon the unambiguous language of the Release, the
Court need not address Plaintiff's contention that any ambiguities in the Release must be
construed against Defendant Ajax as the drafter of this document.  Neither does the Court deem
it necessary to consider the transcript of the administrative hearing at which Plaintiff apparently
acknowledged that he was releasing any and all claims against Ajax.  (*See* Defendant's Reply
Br., Ex. 2, 9/2/2009 Hearing Tr. at 15-16.)