**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JAY BROWN,

       Plaintiff,                           Case No. 10-10137

v.                                    Hon. Gerald E. Rosen

AJAX PAVING INDUSTRIES, INC.,
AMERICAN CONTRACTORS INSURANCE
GROUP, INC., WARD NORTH AMERICA, LP,
VERICLAIMS, INC., NOVAPRO RISK SOLUTIONS, LP,
NOVAPRO US RISK, LLC, and DR. PAUL DROUILLARD,

       Defendants.

_____/

**OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTIONS TO DISMISS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on        February 28, 2011       

PRESENT:  Honorable Gerald E. Rosen
                Chief Judge, United States District Court

## I.  INTRODUCTION

Plaintiff Jay Brown commenced this case in this Court on January 13, 2010,

asserting claims under the federal Racketeer Influenced and Corrupt Organizations Act

("RICO"), 18 U.S.C. § 1961 *et seq.,* against his former employer, Defendant Ajax Paving

Industries, Inc., and a number of other Defendants.  In support of these RICO claims,

Plaintiff alleges that Defendants engaged in a scheme to deny him worker's compensation

benefits for a workplace injury he suffered in July of 2005.

In lieu of answering Plaintiff's complaint, Defendant Paul Drouillard has filed a motion to dismiss the claims asserted against him for lack of subject matter jurisdiction or, alternatively, for failure to state a claim. Likewise, Defendants American Contractors Insurance Group, Inc., Ward North America, LP, VeriClaim, Inc.,[1] and NovaPro Risk Solutions, LP (collectively, the "Insurance Defendants") have moved for dismissal of the claims against them, on the ground that Plaintiff has failed to adequately allege several of the elements necessary to state a viable RICO claim.[2] As the moving Defendants observe in their motions and in supplemental submissions, Judges Edmunds and Borman of this District have recently issued rulings dismissing RICO claims that are quite similar to those asserted by Plaintiff here. *See Brown v. Cassens Transport Co.,* No. 04-72316, 2010 WL 3842373 (E.D. Mich. Sept. 27, 2010) (Borman, J.); *Jackson v. Sedgwick Claims Management Services, Inc.,* No. 09-11529, 2010 WL 931864 (E.D. Mich. Mar. 11, 2010) (Edmunds, J.).[3]

---

[1]This party is misidentified as "VeriClaims, Inc." in the complaint.

[2]The remaining Defendant that has appeared in this suit, Ajax Paving Industries, also sought dismissal of the claims asserted against it, arguing that any such claims were barred by a release Plaintiff signed in connection with the settlement of his claim for worker's compensation benefits. By opinion and order dated September 17, 2010, the Court granted Defendant Ajax's motion. In addition, a party identified as "NovaPro US Risk, LLC" is named in the complaint as a Defendant, but this party evidently has never been served with the complaint, nor has Plaintiff otherwise taken any action to pursue a recovery against this Defendant.

[3]The attorney representing Plaintiff in this case, Marshall Lasser, also served as counsel for the plaintiffs in *Brown* and *Jackson*.

Having reviewed the parties' briefs in support of and opposition to the motions brought by Defendant Drouillard and the Insurance Defendants, as well as the record as a whole, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Defendants' motions "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. For the reasons set forth below, the Court finds that each of these motions should be granted, and that Plaintiff's complaint is subject to dismissal on a number of grounds.

## II.  FACTUAL BACKGROUND

For present purposes, the pertinent facts may be briefly summarized, with more detail to follow as relevant to the particular issues raised in Defendants' motions. Plaintiff Jay Brown was employed by Defendant Ajax Paving Industries, Inc. from May of 2004 until September of 2009. Defendant American Contractors Insurance Group, Inc. ("ACIG") was Ajax's insurance carrier, issuing a policy of insurance with respect to Ajax's obligation under Michigan's Workers' Disability Compensation Act ("WDCA"), Mich. Comp. Laws § 418.101 *et seq.,* to provide worker's compensation benefits to its employees. Defendants Ward North America, LP, NovaPro Risk Solutions, LP, and VeriClaim, Inc. served as third-party administrators under the insurance policy between Ajax and ACIG, handling claims for worker's compensation benefits on behalf of insurer ACIG.

In July of 2005, Plaintiff hurt his left shoulder while on the job, leading him to

3

apply for worker's compensation benefits. In September of 2005, Plaintiff was directed to appear for an independent medical examination ("IME") by Defendant Paul Drouillard, a board-certified orthopedic surgeon. In a report following this examination, Dr. Drouillard opined that Plaintiff's injury appeared to be work-related. Despite this report, Defendant Ajax denied Plaintiff's claim for worker's compensation benefits, evidently on the ground that Plaintiff had not suffered an injury arising out of his employment.

Plaintiff sought administrative review of this denial, and his case was heard by Magistrate Victor McCoy of the Michigan Worker's Compensation Agency in October of 2006. According to Plaintiff's complaint, Ajax, the Insurance Defendants, and their counsel attempted to bribe a witness to testify falsely that Plaintiff had injured his shoulder outside of work, and they also persuaded Dr. Drouillard to testify at the hearing that Plaintiff's injury was *not* work-related. Despite these efforts, and despite Dr. Drouillard's testimony in contravention of his earlier report, the magistrate awarded benefits to Plaintiff. In so ruling, the magistrate expressly found that Dr. Drouillard's testimony at the hearing was not credible, and that his attempt to explain the discrepancy between his testimony and his earlier report was "preposterous." (Complaint at ¶ 9(E)(6).)

Ajax appealed this decision. While this administrative appeal remained pending, Plaintiff and Ajax agreed to a settlement of Plaintiff's claim for worker's compensation benefits. In connection with this settlement, Plaintiff signed a document dated September 1, 2009 and captioned "RESIGNATION, WAIVER OF SENIORITY AND RELEASE

4

OF ALL CLAIMS."  (Defendant Drouillard's Motion, Ex. E (hereafter referred to as the

"Release").)  In this document, Plaintiff agreed, in consideration for payment of a

settlement amount of $70,000, that he would (i) "voluntarily quit his employment with

Ajax Paving Industries, Inc.,", (ii) "waive[] any and all seniority rights he may have," (iii)

"release[] any claim he may have for re-employment based on such seniority rights," and

(iv) "not apply for re-employment with Ajax Paving Industries, Inc. in the future."

(Release at 1.)  The Release further provided:

> . . . Jay E. Brown, in consideration for consent to this Agreement to
> Redeem Liability under the Workers' Disability Compensation Act, . . .
> hereby forever release[s] and discharge[s] Ajax Paving Industries, Inc., its
> agents, attorneys, employees and successors of any and all liabilities, causes
> of action, damages, claims, and demands, of whatever kind and nature,
> arising out of the employment relationship.

(*Id.*)[4]

On January 13, 2010, Plaintiff commenced the present action, alleging that Ajax,

the Insurance Defendants, and Dr. Drouillard engaged in an unlawful scheme to deny and

defraud Plaintiff and others of worker's compensation benefits.  In the present motions,

Dr. Drouillard and the Insurance Defendants contend that the present suit represents an

impermissible "end run" around the exclusive procedures and remedies afforded under

Michigan's WDCA.  They further assert that Plaintiff's allegations, accepted as true, fail

_____

[4]Apart from this Release, Plaintiff also signed an "Agreement to Redeem Liability," in
which he agreed, in exchange for a payment of $70,000, to settle "any and all claims for past,
present and future" benefits and medical expenses under the WDCA.  (Defendant Drouillard's
Motion, Ex. E.)

5

to establish several of the requisite elements of a viable RICO claim.  Finally, the moving

Defendants argue that the Release executed by Plaintiff operates to defeat all of his

claims, and not just those asserted against his former employer Ajax, either because the

remaining Defendants qualify as "agents" of Ajax that are entitled to the benefits of the

Release, or because the Release serves to estop Plaintiff from claiming an entitlement to

benefits beyond those he accepted to settle his claim under the WDCA.

### III. <u>ANALYSIS</u>

**A.    The Standards Governing Defendants' Motions**

Through the present motions, Dr. Drouillard and the Insurance Defendants seek

the dismissal of Plaintiff's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a

claim upon which relief can be granted.[5]  When considering a motion brought under Rule

12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff

and accept all well-pled factual allegations as true.  *League of United Latin American*

*Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007).  Yet, "the tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions."  *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009).  Moreover, "[w]hile a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief

---

[5]Dr. Drouillard's motion also raises purported challenges to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  The Court, however, finds it unnecessary to decide whether the issues in question are truly "jurisdictional" in nature, in light of its conclusion that dismissal is warranted under Fed. R. Civ. P. 12(b)(6).

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks, alteration, and citations omitted). Rather, to withstand a motion to dismiss, the complaint's factual allegations, accepted as true, "must be enough to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 555, 570, 127 S. Ct. at 1965, 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949.

Arguably, to the extent that Defendants rely on the Release executed by Plaintiff as a ground for dismissal of Plaintiff's claims, Defendants have strayed beyond the pleadings and their motions should be treated as seeking summary judgment under Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d).[6] Such conversion, in turn, is permissible so long as all parties are "given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). In this case, Plaintiff has had ample opportunity to address the legal significance of the Release and to present any additional materials that he believes pertinent to this matter, where the Release was the principal focus of the dispositive motion previously brought by Defendant Ajax (and opposed by

---

[6]In fact, as noted earlier, Defendant Ajax brought a successful motion challenging the claims against it as barred by the Release, and this motion was brought (and decided) under Rule 56.

Plaintiff), and where both Dr. Drouillard and the Insurance Defendants raised contentions concerning the Release in their own motions and initial briefs in support.

Thus, to the limited extent that the Court deems it necessary to consider matters outside the pleadings — namely, the Release — the standards of Rule 56 will govern this inquiry, with the Court asking whether "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).[7]  For present purposes, the pertinent record outside the pleadings consists exclusively of the Release and an accompanying "Agreement to Redeem Liability," and the issues arising from this limited record are pure matters of law that may properly be resolved by the Court in deciding Defendants' motions.  Accordingly, the Court turns to the legal issues presented in these two pending motions.

**B.     Because the Insurance Defendants Qualify as Agents of Defendant Ajax Under the Release Executed by Plaintiff, the RICO Claims Asserted Against the Insurance Defendants Are Barred by the Release.**

In a September 17, 2010 opinion and order, the Court held that Plaintiff's RICO claims against his former employer, Defendant Ajax, were barred by the Release he executed in connection with the settlement of his claim for worker's compensation benefits.  In this Release, Plaintiff agreed to "forever release and discharge Ajax Paving

---

[7]The quoted language is from the version of Rule 56 in effect at the time Defendants filed their present motions.  Although the Rule has since been amended, these amendments would not alter the Court' inquiry in this case.

8

Industries, Inc., its agents, attorneys, employees and successors of any and all liabilities, causes of action, damages, claims, and demands, of whatever kind and nature, arising out of the employment relationship," (Release at 1), and the Court readily concluded that the RICO claims asserted against Defendant Ajax in this case arose out of Plaintiff's employment relationship with Ajax.  As one of the grounds for their present motion — as amplified in a supplemental submission filed after the Court issued its September 17 ruling — the Insurance Defendants argue that they qualify as "agents" of Ajax under the Release, and that the RICO claims asserted against them, like the claims against Ajax, are barred by the Release.  The Court agrees.

Under Michigan law,[8] an insurer is deemed to be an agent of the insured when interacting with third parties who seek to recover policy benefits for an injury inflicted by the insured.  *See Maxman v. Farmers Insurance Exchange,* 85 Mich. App. 115, 270 N.W.2d 534, 536 (1978); *Hairston v. Shape Corp.,* No. 257513, 2006 WL 626235, at *3 (Mich. Ct. App. Mar. 14, 2006); *see also* Mich. Comp. Laws § 418.621(4) (requiring that any insurance policy covering worker's compensation benefits include a provision stating that the insurer "assumes all obligations imposed upon the employer" to pay benefits under the WDCA); *Lumbermen's Mutual Casualty Co. v. Bissell,* 220 Mich. 352, 190 N.W. 283, 287 (1922) (holding that an award of worker's compensation benefits is equally binding upon an employer and its insurer).  Similarly, a third-party administrator

---

[8]As noted in the September 17 ruling, the parties are in agreement that Michigan law governs the interpretation of the Release.  (*See* 9/17/2010 Op. at 6 n.3.)

is deemed to be the employer's agent with respect to employee claims for worker's compensation benefits. *See Begin v. Michigan Bell Telephone Co.,* 284 Mich. App. 581, 773 N.W.2d 271, 283 (2009). Moreover, the Insurance Defendants correctly observe that Plaintiff's complaint is replete with allegations that the Insurance Defendants or their employees were acting as agents on behalf of Ajax. (*See, e.g.,* Complaint at ¶ 28(C)(1) (alleging that Patrick Haley, an employee of Defendant Ward North America, acted "on behalf of ACIG, Ajax, and Ward North America").) Thus, the Court has no difficulty in concluding that the Insurance Defendants qualify as "agents" of Ajax under the Release executed by Plaintiff.

Plaintiff makes no effort to argue otherwise, or to suggest a basis for the Court to distinguish between Ajax and the Insurance Defendants in determining the scope of the Release.[9] Indeed, Plaintiff has not even acknowledged the Insurance Defendants' claim to the status of "agents" under the Release, much less endeavored to explain why this claim should be rejected. Accordingly, having previously determined that Plaintiff's RICO claims against Ajax are barred by the terms of the Release, the Court readily concludes that Plaintiff's RICO claims against the Insurance Defendants likewise are barred under the Release.

**C.    Plaintiff's Allegations, Taken as True, Fail To Establish Certain of the**

---

[9]Notably, in his response to Dr. Drouillard's motion to dismiss, Plaintiff admits that he "redeemed his workers compensation claim against ***all defendants except Dr. Drouillard,***" (Plaintiff's 4/14/2010 Response Br. at 6-7 (emphasis added)), making no effort to distinguish among Ajax and the Insurance Defendants as parties to this settlement.

**Required Elements of a RICO Claim.**

In their pending motions, Dr. Drouillard and the Insurance Defendants argue that the allegations of Plaintiff's complaint, even if accepted as true for present purposes, fail as a matter of law to satisfy several of the prerequisites for stating a viable RICO claim. Upon reviewing the complaint in light of the pertinent case law, the Court agrees that this pleading suffers from at least two of the deficiencies identified by Defendants, and thus the Court finds it unnecessary to address Defendants' remaining challenges.

1. **The Damages Identified in Plaintiff's Complaint Do Not Qualify as Injuries To "Business or Property," As Required to Pursue a Recovery Under the RICO Statute.**

RICO confers a civil right of action only upon those persons who are "injured in [their] business or property." 18 U.S.C. § 1964(c). As the Sixth Circuit has recognized, this language "excludes recovery for personal injuries." *Drake v. B.F. Goodrich Co.,* 782 F.2d 638, 644 (6th Cir. 1986) (internal quotation marks and citation omitted). In addition, the courts have held that this exclusion extends to pecuniary losses that flow from personal injuries, such as lost earnings, medical expenses, and attorney fees incurred in connection with personal injuries. *See, e.g., Evans v. City of Chicago,* 434 F.3d 916, 925-31 (7th Cir. 2006); *Grogan v. Platt,* 835 F.2d 844, 846-48 (11th Cir. 1988); *Bradley v. Phillips Petroleum Co.,* 527 F. Supp.2d 625, 646-47 (S.D. Tex. 2007), *aff'd,* 337 F. App'x 397 (5th Cir. June 30, 2009). In this case, there is no question that the damages identified in Plaintiff's complaint — diminished worker's compensation benefits, losses resulting from the delayed payment of benefits, medical expenses, and costs and attorney

11

fees incurred in an effort to secure the benefits to which Plaintiff allegedly was entitled, (*see* Complaint at ¶ 29) — all stem from an underlying personal injury that led Plaintiff to pursue an award of worker's compensation benefits.  The question, then, is whether the damages claimed by Plaintiff nevertheless may be construed as injuries to his "business or property" that are recoverable under the RICO statute.

In the recent decision in *Brown, supra,* 2010 WL 3842373, at *17-*19, Judge Borman of this District concluded that damages indistinguishable from those alleged by Plaintiff here did not qualify as losses to "business or property" under RICO.  Upon surveying *Evans, Grogan,* and a number of other cases addressing the recoverability under RICO of damages stemming from underlying personal injuries, the court held:

> In the instant case, Plaintiffs claim that they were deprived of workers' compensation benefits, and incurred attorneys' fees, medical care expenses and mileage to and from medical care and claim damages "measured by the amount of benefits improperly held from [them], plus interest as provided by law, all tripled in accordance with RICO, together with attorney fees and costs as provided by law."  These damages unquestionably were incurred as a direct result of Plaintiffs' on-the-job injuries.  But for their workplace injuries, Plaintiffs would have no claim at all.  The fact that the WDCA allows these Plaintiffs to bypass the legal proofs of negligence and causation normally associated with a personal injury claim does not change the nature of their claims — they seek to recover for injuries they allege that they suffered while working for [the defendant employer] and they seek medical benefits and related expenses. Regardless of how Plaintiffs characterize the wrong, their medical expenses, workers' compensation benefits, medical mileage and attorneys['] fees are damages which are indisputably wholly derivative of their personal injuries and as such are not injuries to "business or property" under RICO. Plaintiffs[] seek damages in the amount of benefits they were denied and related medical expenses, i.e. they seek reimbursement for the pecuniary loss they suffered as a result of their workplace injuries, damages not recoverable under RICO . . . .

*Brown,* 2010 WL 3842373, at \*19.

Plaintiff's efforts to challenge or distinguish Judge Borman's ruling in *Brown* are unpersuasive.[10]  First, Plaintiff questions *Brown's* reliance on such decisions as *Evans* and *Grogan,* where the plaintiffs in those cases sought damages directly from the tortfeasors who allegedly inflicted the personal injuries giving rise to the plaintiffs' RICO claims. Yet, Plaintiff does not explain how the identity of the ***defendant*** should alter a court's characterization of the recovery sought by a ***plaintiff*** in a RICO action.  In this case, regardless of who Plaintiff has elected to sue, there is no denying that he himself has identified his damages as "financial loss[es]," including "loss of worker compensation benefits, time value in the delayed receipt of benefits, loss of payment for medical bills, drugs, attendant case, and mileage, [and] attorney fees paid to recover workers compensation benefits."  (Complaint at ¶ 29.)  Just as in *Evans,* 434 F.3d at 930-31, and *Grogan,* 835 F.2d at 847-48, then, the damages alleged by Plaintiff here undeniably

_____

[10]As a threshold matter, Plaintiff contends that Judge Borman's ruling runs counter to the Sixth Circuit's earlier decision in the same case, *Brown v. Cassens Transport Co.,* 546 F.3d 347 (6th Cir. 2008), in which the court reversed Judge Borman's initial dismissal of the plaintiffs' RICO claims and remanded for further proceedings.  Yet, the Sixth Circuit had no occasion to consider whether the plaintiffs in that case had alleged injuries to their business or property as required to recover under the RICO statute, because Judge Borman's initial ruling did not address this question.  While the Sixth Circuit noted in passing that the plaintiffs in that case had identified their injuries as "the deprivation of their worker's compensation benefits and expenses for attorney fees and medical care," *Brown,* 546 F.3d at 357, nothing in the court's decision evidences any sort of consideration of — much less a ruling on — the question whether these claimed damages would constitute injuries to business or property within the meaning of § 1964(c).  Certainly, Judge Borman did not consider the matter resolved by the Sixth Circuit, but instead proceeded to address this question on remand.  This Court, likewise, does not read the Sixth Circuit's decision in *Brown* as having settled (or even addressed) this question.

qualify as pecuniary losses flowing from underlying personal injuries.  Consequently, this Court, like Judge Borman in *Brown,* finds it appropriate to rely on these appellate court decisions holding that the economic consequences of personal injuries do not qualify as injuries to "business or property" under RICO.

Next, Plaintiff seeks to recharacterize his alleged injury here as a lost or impaired claim for worker's compensation benefits, and he points to Michigan court decisions recognizing that litigants in disputes over worker's compensation benefits have a property interest in such claims.  *See, e.g., Williams v. Hofley Manufacturing Co.,* 430 Mich. 603, 424 N.W.2d 278, 282-83 & n.16 (1988).  This contention, however, fails on a number of grounds to aid Plaintiff in his effort to identify the requisite injury to his "business or property."  First, in the sole paragraph of Plaintiff's complaint addressing his alleged damages, there is no reference whatsoever to a lost or impaired cause of action for worker's compensation benefits.  Instead, Plaintiff has characterized his alleged losses in this case as purely "financial" in nature, (Complaint at ¶ 29) — *i.e.,* he complains only of the economic consequences of Defendants' concerted effort to deny him the full benefits to which he allegedly was entitled.  Consequently, this case cannot be distinguished from *Brown* (or the decisions upon which it relies) on this basis.

In any event, even assuming Plaintiff had pled a lost or impaired claim for worker's compensation benefits as an element of his damages, the courts have accepted this "lost cause of action" theory of civil RICO damages only where the underlying wrong to be vindicated through the "lost" suit is itself an injury to "business or property."

14

In *Malley-Duff & Associates, Inc. v. Crown Life Insurance Co.,* 792 F.2d 341, 354 (3d Cir. 1986), for example, the Third Circuit held that a lost or impaired cause of action qualifies as an injury to business or property "when it arises out of the termination of a business." Likewise, the Tenth Circuit has held that fraud "that causes one to relinquish a cause of action ***arising out of his business*** is an injury to 'business or property.'" *Deck v. Engineered Laminates,* 349 F.3d 1253, 1259 (10th Cir. 2003) (emphasis added).

In *Magnum v. Archdiocese of Philadelphia,* No. 06-5117, 253 F. App'x 224, 227-28 (3d Cir. Nov. 6, 2007), in contrast, the Third Circuit distinguished its prior decision in *Malley-Duff* on the ground that the earlier suit involved an underlying injury to a business interest while the present suit did not. In *Magnum,* the plaintiffs alleged that the defendant Archdiocese engaged in a pattern of concealing child abuse by clergy, thereby depriving them of the opportunity to bring timely personal injury suits and pursue state-law tort remedies. The court found that these underlying personal injuries rendered its earlier ruling in *Malley-Duff* (and the Tenth Circuit's decision in *Deck)* inapposite:

> [A]lthough a cause of action indeed may be a form of property, injuries to that property will only be redressable under civil RICO if the plaintiff can allege that the wrong to be vindicated is itself an injury to "business or property" within the meaning of RICO. This distinction separates *Malley-Duff* and *Deck* from the case at bar, because the wrong underlying [the plaintiffs'] lost opportunity to sue — personal injury from childhood sexual abuse — does not implicate injury to "business or property" under § 1964(c) . . . .

*Magnum,* 253 F. App'x at 228. Similarly, the harm underlying Plaintiff's lost or impaired worker's compensation claim in this case is a personal injury he suffered on the job that

gave rise to his claimed entitlement to benefits.  The Court agrees with *Magnum* that this underlying personal injury defeats Plaintiff's effort to establish the requisite injury to "business or property."

Finally, in his effort to address one flaw in his theory of damages (the absence of injury to "business or property"), Plaintiff has introduced another, equally insurmountable obstacle to a RICO recovery.  Simply stated, Plaintiff was not deprived of his claim for worker's compensation benefits — he voluntarily settled it.  In electing this course of action, Plaintiff expressly agreed to "a redemption of liability for $70,000.00 for all injuries and/or disability . . . , whether known or unknown or later developed," and he agreed to relinquish "any and all claims for past, present and future weekly compensation benefits."  (Defendant Drouillard's Motion, Ex. E, Agreement to Redeem Liability.)  At an administrative hearing addressing this settlement, Plaintiff acknowledged under oath that the $70,000 settlement amount paid to him "encompasse[d] all the benefits that would have been owed to [him] over the closed period" during which he was entitled to benefits, that he had entered into a "full, final and complete settlement" of his claim for benefits, and that he could not reopen the case in an effort to recover additional benefits. (Defendant Drouillard's Motion, Ex. F, Redemption Hearing Tr. at 11.)

Against this backdrop, Plaintiff cannot establish any injury flowing from an allegedly lost or impaired claim for worker's compensation benefits unless he first repudiates or revokes his agreement to accept $70,000 in settlement of this claim.  Even accepting, as Plaintiff contends, that the RICO statute provides an alternative theory of

16

recovery through which he can seek to collect benefits that allegedly should have been awarded to him under Michigan's WDCA,[11] the fact remains that Plaintiff proposes to measure his damages by reference to the worker's compensation benefits he "lost" as a result of Defendants' alleged fraud. Yet, in settling his worker's compensation claim, Plaintiff elected to abandon the process established by the Michigan legislature for determining the amount of benefits to which an injured worker is entitled, and instead agreed to accept a payment of $70,000 in full settlement of his claim for benefits. The Michigan Supreme Court has recognized as a "well-settled principle of Michigan law that settlement agreements are binding until rescinded for cause." *Stefanac v. Cranbrook Educational Community,* 435 Mich. 155, 458 N.W.2d 56, 60 (1990). Plaintiff has made no effort to revoke, rescind, or otherwise retreat from his agreement to settle his worker's compensation claim, much less attempted to establish "cause" for doing so. It follows that he is bound by the terms of this settlement, including his agreement to accept $70,000 as full payment for all benefits to which he was entitled under the WDCA.[12]

---

[11]In *Jackson, supra,* 2010 WL 931864, at *14-*18, and *Brown, supra,* 2010 WL 3842373, at *7-*17, Judges Edmunds and Borman of this District held that RICO claims indistinguishable from those asserted here represented an impermissible "end run" around the exclusive procedures and remedies prescribed by the WDCA for recovering worker's compensation benefits. This Court need not decide this question, in light of its conclusion that Plaintiff's RICO claims are subject to dismissal on other grounds.

[12]In his motion to dismiss, Dr. Drouillard cites the Michigan Supreme Court's decision in *Stefanac* for the proposition that Plaintiff was obligated to tender back the $70,000 settlement payment before he could attempt to evade the binding effect of this settlement. Plaintiff, however, responds that because Dr. Drouillard was not a party to the worker's compensation case and did not contribute to the settlement, he is in no position to insist that Plaintiff tender back the $70,000 payment. The Court sees no need to decide this question, where the "tender

17

Even if Plaintiff's settlement of his worker's compensation claim did not

altogether foreclose a recovery of "lost" benefits in this case, it nonetheless would prevent

him from establishing with the requisite degree of definiteness and certainty that he has

suffered an actual injury to his business or property.  The courts have held that a showing

of injury under RICO "requires proof of a concrete financial loss and not mere injury to a

valuable intangible property interest."  *Maio v. Aetna, Inc.,* 221 F.3d 472, 483 (3d Cir.

2000) (internal quotation marks and citation omitted); *see also McLaughlin v. American*

*Tobacco Co.,* 522 F.3d 215, 227 (2d Cir. 2008) ("A plaintiff asserting a claim under 18

U.S.C. § 1964(c) must allege *actual,* quantifiable injury."); *Price v. Pinnacle Brands,*

*Inc.,* 138 F.3d 602, 607 (5th Cir. 1998) ("Injury to mere expectancy interests or to an

'intangible property interest' is not sufficient to confer RICO standing.").  Even in cases

where a claim for worker's compensation benefits has been pursued to its completion, it

might well prove difficult to determine the amount of benefits a claimant would have

received but for alleged fraud in the course of the proceedings.  *See Brown,* 2010 WL

3842373, at *20-*21 (finding that the damages claimed in that case were too speculative,

as they rested upon the unsupported premise that the plaintiffs had "an entitlement, a

protected property interest, in the claimed benefits").  Here, however, such a "but for"

---

back" requirement addressed in *Stefanac* is a "condition precedent to the right to repudiate a
contract of settlement," *Stefanac,* 458 N.W.2d at 60, and where Plaintiff here has made no effort
to repudiate his settlement.  Rather, Plaintiff seems to believe — incorrectly, in the Court's view
— that the settlement of his worker's compensation claim is wholly consistent with, and does not
foreclose, his effort to establish a RICO injury measured by reference to the additional worker's
compensation benefits he would have obtained but for Defendants' alleged fraud.

18

determination of "lost" benefits would be a matter of utter speculation, where Plaintiff short-circuited the process through which his claim for benefits would have been assigned a definite value. The magistrate who heard this claim, after all, decided that Plaintiff was entitled to an award of benefits, and who is to say that this award would not have been affirmed on administrative appeal if the parties had not agreed to a settlement? Under these circumstances, the Court finds that Plaintiff has failed to allege an injury to "his business or property," 18 U.S.C. § 1964(c), as required to pursue a civil RICO claim.

   2.   **The Pattern of Racketeering Activity Alleged by Plaintiff Lacks the Necessary Continuity to Support a Viable RICO Claim.**

   In order to state viable RICO claims, Plaintiff "must allege that the RICO enterprise engaged in a 'pattern of racketeering activity' consisting of at least two predicate acts of racketeering activity occurring within a ten-year period." *Moon v. Harrison Piping Supply,* 465 F.3d 719, 723 (6th Cir. 2006) (citing 18 U.S.C. § 1961(5)). Among the requirements for alleging the requisite "pattern of racketeering activity," the predicate acts identified in the plaintiff's complaint "must have sufficient 'continuity.'" *Moon,* 465 F.3d at 724. "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." 465 F.3d at 724 (internal quotation marks and citation omitted). "Continuity may be established at the pleading stage by alleging facts of either closed- or open-ended racketeering activity." 465 F.3d at 724.

   In *Moon,* 465 F.3d at 724-28, the Sixth Circuit considered allegations similar to

19

those asserted by Plaintiff here,[13] and concluded that the plaintiff in that case, Timothy

Moon, had failed to plead either a closed- or an open-ended period of continuity.  After

first addressing the question whether the plaintiff's pleadings alleged a pattern of

racketeering activity extending over nine months or two-and-a-half years, the court found

that closed-ended continuity was lacking in either event:

> . . . [E]ven if the racketeering activity lasted for two-and-a-half
> years, as Moon insists, facts establishing a closed period of continuity are
> still lacking.  Moon has pleaded that the Defendants embarked upon a
> coordinated scheme to wrongfully terminate his workers' compensation
> benefits.  All of the predicate acts — the mailing of the Notice and Second
> Notice cutting off his benefits and the mailing of Dr. Ray's fraudulent
> medical report — were keyed to Defendants' single objective of depriving
> Moon of his benefits.  No other schemes, purposes, or injuries are alleged,
> and there are no facts suggesting that the scheme would continue beyond
> the Defendants accomplishing their goal of terminating Moon's benefits.  In
> circumstances such as these, the purported racketeering activity does not
> bear the markings of the long-term criminal conduct about which Congress
> was concerned when it enacted RICO.
>
> * * * *
>
> As in [other cases surveyed by the court], Moon's allegations center
> around a single RICO scheme with a single object stemming from a dispute
> about whether Moon is impaired by a workplace disability entitling him to
> benefits.  Even assuming a period of two-and-a-half years of racketeering
> activity, these allegations do not give rise to closed-ended continuity.

465 F.3d at 725-26 (internal quotation marks and citation omitted).

The court next considered whether plaintiff Moon had alleged an open-ended

period of racketeering activity, and again found his allegations lacking:

---

[13]The plaintiff in *Moon,* like the plaintiffs in *Jackson* and *Brown,* was represented by the
same counsel who is representing Plaintiff here.

Moon's allegations also do not give rise to a finding of open-ended continuity. This inquiry turns on whether the plaintiff has pleaded facts suggesting the threat of continued racketeering activities projecting into the future. In [*H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S. Ct. 2893 (1989)], the Supreme Court held that open-ended continuity could be pleaded through facts showing "a distinct threat of long-term racketeering activity," or by showing "that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *H.J. Inc.,* 492 U.S. at 242, 109 S.Ct. 2893.

Here, Moon argues that open-ended continuity exists because there is nothing to stop the Defendants from persisting in their cycle of fraudulently terminating his benefits, restoring them, and then fraudulently terminating them again. The district court was not persuaded, finding that there is no risk of ongoing racketeering activity where Moon petitioned the [Michigan Workers' Disability Compensation] Bureau for a resolution of his dispute with Defendants. We agree. A final decision of the Bureau (once all appellate options have been exhausted) is binding on the parties and, if favorable to Moon, would prevent the Defendants from withdrawing benefits in the absence of further action by the Bureau. In other words, the Defendants could no longer suspend Moon's benefits through issuing Notices of Dispute, but would instead have to file a petition with the Bureau to stop their payments to Moon and prove that he is no longer entitled to them.

\* \* \* \*

Finally, Moon has not pleaded any allegations to the effect that the fraudulent termination of workers' compensation benefits is Defendants' regular way of doing business. True, Moon pleads that "Dr. Ray was known to defendants, through their attorney Thaddeus Felker, as a doctor who could be relied upon to write 'cut off' reports in workers compensation cases; defendants and/or their attorney had relied upon him in the past to issue 'cut off' reports." Moon also pleads that "[o]n information and belief, one or more members of the enterprise engaged in similar acts to defraud other persons of their workers' compensation benefits." These allegations do not reasonably support the notion that the alleged fraud of which Moon complains is Defendants' *regular* way of doing business. "Regular" means "usual; normal; customary." *Random House Unabridged Dictionary* 1624 (2d ed.1993). Moon's allegations regarding open-ended continuity amount to the following: (1) Moon — the only plaintiff in this case — was denied

21

workers' compensation benefits as a result of Defendants' scheme to use Dr. Ray to fraudulently deny benefits; (2) Defendants had used Dr. Ray for this purpose in the past; and (3) at some point, Defendants treated some other people similarly to Moon. Moon does not allege the sort of longstanding relationship that would give rise to a threat of continued racketeering activity. Drawing all reasonable inferences in Moon's favor may lead us to conclude that several instances of similar conduct have occurred, but they do not support a systematic threat of ongoing fraud. In short, the leap from Moon's allegations to the conclusion that Defendants customarily bilked employees out of workers' compensation benefits is too great, even drawing all reasonable inferences in favor of Moon.

465 F.3d at 726-28 (citations omitted).

The allegations in the present case do not differ in any material respect from those that *Moon* found insufficient to establish either open- or closed-ended continuity. Turning first to closed-ended continuity, all of the specific and pertinent allegations made by Plaintiff in support of the pattern of racketeering identified in his complaint pertain to "Defendants' single objective of depriving [Plaintiff] of his benefits." *Moon,* 465 F.3d at 725. While Plaintiff contends that he, in contrast to the plaintiff in *Moon,* has "identified a second victim" of Defendants' alleged scheme, (Plaintiff's 4/31/2010 Response Br. at 18), this contention rests solely upon the following allegation:

> . . . [I]n about 2005 or 2006, Ajax, perhaps with the assistance of other defendants (other than Dr. Drouillard), fraudulently denied the workers compensation claim of Michigan Ajax employee Richard (Rick) Strauss. Ajax foreman Jerry Quick laughingly told [Plaintiff] "they f**ked" Mr. Strauss "out of" his workers compensation; this occurred after Mr. Strauss had his leg crushed at work on a front end loader. Mr. Quick bragged to [Plaintiff] that Ajax fired him after the injury.

(Complaint at ¶ 25(A).) Yet, even assuming the Ajax foreman in question had personal knowledge of the disposition of Mr. Strauss's worker's compensation claim, Plaintiff

offers only the wholly conclusory assertion that this claim was "fraudulently denied," backed with no specifics or supporting detail whatsoever.  Moreover, the complaint provides no basis for linking this alleged denial of benefits to the disposition of Plaintiff's own claim for benefits; instead, Plaintiff speculates only that Defendant Ajax "perhaps" might have been assisted by one or more of the Insurance Defendants (but not Dr. Drouillard) in denying benefits to Mr. Strauss.  These allegations, then, lend no support to the inference that Mr. Strauss's and Plaintiff's claims for benefits were addressed as part of a larger pattern of racketeering, involving the same or overlapping participants acting with the shared and ongoing objective of denying benefits to multiple Ajax workers.

Plaintiff fares no better with his attempts to distinguish *Moon* on the grounds (i) that he seeks here to represent a class of plaintiffs, while the plaintiff in *Moon* stood alone, and (ii) that he has alleged here that Defendants' racketeering activities "involved workers compensation claimants in addition to [Plaintiff]," (Complaint at ¶ 25).  As the Supreme Court recently emphasized, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal alteration, quotation marks, and citation omitted). Plaintiff's allegations of other defrauded claimants suffer from precisely these defects. Although the Court recognizes that discovery would provide an opportunity for Plaintiff to learn more about other Ajax workers who sought worker's compensation benefits, he nonetheless must suggest at least ***some*** basis for believing that such an effort might prove

23

fruitful, beyond the sheer metaphysical possibility that other claims for benefits might have been denied under circumstances that would support an inference of a pattern of activity.  Surely, a reasonable pre-filing investigation could have uncovered at least some indicia of multiple claim denials under somewhat similar circumstances, yet Plaintiff offers nothing on this score.  Thus, *Moon* cannot be distinguished on the basis of additional, yet wholly vague and conclusory, allegations of additional victims that Plaintiff and his counsel have seen fit to include in the present complaint.

Finally, Plaintiff points to his allegations of racketeering activity continuing "over a period of at least 4 years, starting in July 2005 and continuing to at least August 2009," (Complaint at ¶ 25), and he notes that this exceeds the two-and-a-half years of racketeering activity that *Moon* deemed insufficient to establish closed-ended continuity. As an initial matter, the Court does not read *Moon* as focusing heavily on the precise duration of the racketeering activity, but as turning largely on the fact that the plaintiff had identified only "a single RICO scheme with a single object" and involving a single victim.  *Moon,* 465 F.3d at 726; *see also Columbia Natural Resources, Inc. v. Tatum,* 58 F.3d 1101, 1110 (6th Cir. 1995) (observing that "a pattern is the sum of various factors including:  the length of time the racketeering activity existed; the number of different schemes (the more the better); the number of predicate acts within each scheme (the more the better); the variety of species of predicate acts (the more the better); the distinct types of injury (the more the better); the number of victims (the more the better); and the number of perpetrators (the less the better)").  In any event, the Insurance Defendants

24

correctly point out that in contrast to Plaintiff's generalized claim of racketeering activity spanning over four years, the ***specific instances*** of such activity identified in Plaintiff's complaint extended about fifteen months (at most), from Plaintiff's injury in July of 2005 to the date of the worker's compensation hearing in October of 2006.  Likewise, while Plaintiff alleges in his complaint that Defendants engaged in predicate acts "between Feb. 1, 2006 and August 1, 2009," (Complaint at ¶ 28(C)(4)), the specific acts that follow span only from January to September of 2006.  Again, as noted above, the Court need not accept conclusory allegations that rest upon speculative leaps rather than the reasonable prospect of evidentiary support.  Accordingly, the Court finds that Plaintiff's allegations here, like the similar allegations advanced in *Moon,* do not establish a closed-ended period of continuity.

*Moon* also forecloses Plaintiff's effort to plead open-ended continuity.  Here, as in that case, there is certainly "no risk of ongoing racketeering activity" intended to deprive Plaintiff of his worker's compensation benefits, where the parties have agreed to resolve and settle Plaintiff's claim once and for all through a payment of $70,000 and Plaintiff's execution of the Release and an Agreement to Redeem Liability.  Nor do the allegations of Plaintiff's complaint support the inference "that the fraudulent termination of workers' compensation benefits is Defendants' regular way of doing business."  *Moon,* 465 F.3d at 727 (internal quotation marks and citations omitted).  While it is true, as discussed earlier, that Plaintiff has alleged a "regular and continuing" scheme that "involved workers compensation claimants in addition to [Plaintiff]," (Complaint at ¶ 25), the Court has

25

already explained that this allegation is conclusory, speculative, and lacking in any prospect of evidentiary support.  In any event, the plaintiff in *Moon* similarly alleged that "[o]n information and belief, one or more members of the enterprise engaged in similar acts to defraud other persons of their workers' compensation benefits," yet the Sixth Circuit concluded that this was insufficient to "give rise to a threat of continued racketeering activity."  *Moon,* 465 F.3d at 727; *see also Jackson, supra,* 2010 WL 931864, at *30-*31 (finding that allegations similar to those made in *Moon* and here failed to establish open-ended continuity).  Thus, the Court holds that Plaintiff has failed to plead allegations of either closed- or open-ended continuity that, if proven, could support the requisite finding of a pattern of racketeering activity.

## IV.  **CONCLUSION**

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant Paul Drouillard's March 22, 2010 motion to dismiss (docket #26) is GRANTED as to the issues ruled upon in the present opinion, and is otherwise DENIED AS MOOT.  Next, IT IS FURTHER ORDERED that the Insurance Defendants' March 25, 2010 motion to dismiss (docket #29), as supplemented by an October 8, 2010 motion (docket #50), is GRANTED as to the issues ruled upon in the present opinion, and is otherwise DENIED AS MOOT.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  February 28, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 28, 2011, by electronic and/or ordinary mail.

s/Ruth A. Gunther
Case Manager